## STETSON *v.* GODFREY.

Where the plaintiff relies upon evidence that the defendant has admitted and promised to pay a particular account, and the books of the former are produced to show what that account contains, it is not necessary, although the items appear to have been posted, to produce the ledger.

Nor is it an objection to the use of the books in such case, that the clerk who made the entries is not produced as a witness.

Where a witness testifies by the aid of minutes which he made on a former occasion, it is not an objection that the minutes are in pencil, and have, since they were made, been kept by the party calling him.

A party is not bound to attend and to produce books and papers before an auditor upon a simple notice from him of the time and place of hearing, and without special notice that his personal examination, or the production of such books and papers, will be demanded.

If a party before an auditor refuses to answer interrogatories concerning a claim that he seeks to establish, the claim may, for that cause, be disallowed by the auditor.

ASSUMPSIT. The cases were referred to an auditor, who found a balance for the plaintiffs, and at the request of the parties reported the evidence and the exceptions which were taken at the hearing.

It appeared that Joshua Stetson and Augustus Barnes were partners in trade in Boston, under the firm of Stetson & Barnes, from January 1 to July 1, 1844, when Barnes went out of the concern and Julius Cushman came in as a partner with Stetson, under the firm of Joshua Stetson & Co., and continued the business from July 1, 1844, to January 1, 1846; that upon the books of Stetson & Barnes there was an account against Godfrey and one Gilbert, under the name of Godfrey & Gilbert, for $114.16, and an account against Godfrey for $71.60; and upon the books of Joshua Stetson & Co. there was an account against Godfrey for $74.52. The day-books of Stetson & Barnes and of Stetson & Co., containing the original entries of their sales, were before the auditor, and the accounts appeared to be entered regularly upon them. There were post marks, showing that the accounts were posted into a ledger, but the ledger was not before the auditor.

About the first of April, 1845, Godfrey came into the plaintiffs' store, in Boston, for the purpose of adjusting the demands of Stetson & Barnes and of Stetson & Co., against him, and against Godfrey & Gilbert, and did adjust them with Joseph E. Paine, who was at that time

the book-keeper, who had the custody of the books of Stetson & Barnes and of Stetson & Co.; all the business of both firms being posted into one ledger. Paine testified that the books of both firms were present at the time of settlement, but he could not swear that Godfrey examined the accounts on the day-books or ledger, but he had no doubt that Godfrey examined the accounts, either upon the books or upon a statement of them drawn off from the books. It did not appear that either firm had any other claim against Godfrey or Godfrey & Gilbert than the accounts before mentioned. Godfrey made no objection to any of the accounts, but adjusted them by paying $18.18 in cash, and giving his note for $250, dated April 1, 1845, payable to the order of J. Stetson & Co., in sixty days from date. Paine entered the settlement upon the bill-book of the plaintiffs, in pencil marks as follows:

| | | |
|---|---|---|
| " To settle Godfrey & Gilbert's account, | | $114.16 |
| To settle C. Godfrey, | | 146.12 |
| To balance of interest on account, | | 5.40 |
| To interest on extension of note, | | 2.50 |
| | | $268.18 |
| By cash on account, | 15.68 | |
| By cash for interest on extension, | 2.50 | 18.18 |
| | | $250.00 |

Godfrey gave his note for that balance, not in payment or discharge of the accounts, as part of the accounts were against Gilbert and him, and it was not intended to discharge Gilbert, but the note was given as a matter of convenience or medium of collection, and the accounts were to remain undischarged until the note was paid, when it was to be entered upon the books in payment of the accounts. No other entry of the settlement was made upon the books than the one in pencil marks. which has since remained in the plaintiffs' possession. Paine could not state the particulars of that transaction or settlement from

his recollection, without reference to the memorandum in pencil marks, or to the books and note. The articles stated in the account are charged in the hand-writing of George C. Stearns and of Joseph Sawyer—Stearns being the book-keeper and Sawyer a salesman of the plaintiffs' at the time.

The defendant objected to the evidence offered, on the following grounds: 1. Because the witness was not the book-keeper of the plaintiffs at the time the articles were charged. 2. Because the ledger upon which the account was posted, was not produced. 3. Because the witness testified from a memorandum in pencil marks, which has not been in his possession but in the possession of the plaintiffs since it was made. 4. Because the plaintiffs did not appear personally, and answer interrogatories under oath, in relation to the matters in controversy.

The auditors notified the plaintiffs' attorney of the time and place of hearing, but no other notice was served upon them.

The defendant filed as a set-off, and claimed to have allowed to him, the receipt of which the following is a copy:

"Boston, October 15, 1844.

Received of C. L. Godfrey seventy-five dollars on account.                    Joshua Stetson & Co.,

By Joseph Sawyer."

It was admitted that Joseph Sawyer was a clerk in the store of the plaintiffs at the date of the receipt, and that the receipt is in his hand-writing, and that clerks in the store, in the absence of the book-keeper, sometimes received money for the plaintiffs and gave receipts therefor. It was contended by the plaintiffs' counsel that the cash for which said receipt was given was credited and allowed by them to Godfrey and Gilbert, and the cash-book of the plaintiffs was produced, upon which was the following entry, in the hand-writing of George C. Stearns, their

book-keeper: "October 15, 1844.    Cash, Dr., to God-frey & Gilbert, on account, $75.00."    The plaintiffs' attor-ney moved that the defendant might be put to answer, under oath, interrogatories relating to said receipt.    The defendant refused to answer under oath any interrogato-ries, unless the plaintiffs should also be put to answer un-der oath interrogatories in relation to the matters in con-troversy.    Neither of the plaintiffs appeared personally before the auditor.

The note for $250, before mentioned, was produced by the plaintiffs' attorney, but nothing was claimed upon it in this action.

The defendant objected to the sufficiency of the evi-dence to prove the account claimed by the plaintiffs in this action.

*M. Murphy*, for the defendant.

*Stanyan*, for the plaintiffs.

WILCOX, J.    If the plaintiffs had relied upon their ac-count books, accompanied by their suppletory oaths, as evidence to support their claim, it would have been neces-sary for them to produce the ledger, into which it appeared by marks upon the day-books that the accounts had been posted.    *Eastman* v. *Moulton*, 3 N. H. 156; *Prince* v. *Swett*, 2 Mass. 569.    But such was not the nature of the plain-tiffs' proof.    They relied upon evidence of the defendant's admission of his liability, resulting from a settlement and adjustment of the accounts.    The settlement was shown, and the books were produced to show what was settled.

Nor is it an objection that the entries in the books pro-duced were not made by the witness; for, as has been said, the plaintiffs did not rely upon the entries as proof of the promises charged, but upon the admission of the defendant that the entries, by whomsoever made, were correct.

Stetson *v.* Godfrey.

Nor is it a sound objection that the witness testified from pencil marks, and that they had been, since they were made, in the custody of the plaintiffs, if these marks or minutes were of such a character that he could identify them as having been made by himself, and could rely upon them.

The defendant also objects that the plaintiffs did not appear personally, and answer interrogatories in relation to the matters in controversy. A party before an auditor has the right to the testimony of his adversary; but he cannot be required to testify, unless he be present at the auditing, or unless he has had reasonable notice from the other party that his testimony will be required, so that he may attend. A simple notice of the time and place of hearing, issued by the auditor, does not impose upon the party the duty of a personal attendance. If, in the course of the hearing, it becomes necessary for one party to require of the other to produce books and papers, or to answer interrogatories on oath, and the books and papers or the party are not present, application should be made to the auditor for delay, that notice may be given to the party to produce his books and papers, or to attend and answer interrogatories. For without such special notice a party is not bound to attend as the witness of his adversary, or to carry books and papers to be subjected to his examination, in the doubtful event of such examination being required at the hearing.

The defendant claimed to be allowed in set-off $75, for which he produced a receipt given him by the plaintiffs' clerk. The plaintiffs alleged that although the receipt was given to the defendant, the amount had been allowed to him and his partner Gilbert, and the plaintiffs' cashbook was produced as evidence of that fact.

The cash-book would not be evidence of the plaintiffs' right so to apply money receipted to the defendant alone. But the defendant being required to answer interrogato-

ries concerning that receipt refused to do so. His set-off cannot, therefore, be allowed, unless his refusal was upon sufficient ground.

He refused to answer unless the plaintiffs would also answer interrogatories relative to the matters in controversy. The defendant being present, was bound to answer. If he wanted answers from the plaintiffs, his course was, as has been suggested, to apply to the auditor for time to give the necessary notice to the plaintiffs that their services were required. Their absence afforded him no excuse for declining to answer concerning the claim which he presented, and the claim was, therefore, justly disallowed.

*Judgment for the plaintiffs on the report.*